**Julian Carlton REID, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 90–70334.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1991.

Decided Nov. 13, 1991.

Perry S. Goldman, Morrison & Foerster, San Francisco, Cal., for petitioner.

William J. Howard, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Julian Carlton Reid, a.k.a. John Kenneth Opoku, appeals from a decision of the Board of Immigration Appeals (the Board). We reverse and remand for further proceedings consistent with this opinion.

BACKGROUND AND PROCEEDINGS

Reid was born August 6, 1960 in Kumasi, Ghana. He alleges that he participated in a coup against the Rawlings government of Ghana; that the coup failed; and that some of his friends were captured and executed. Reid fled to Britain and then entered the United States. He was apprehended by the

Immigration Service and on November 10, 1988 was given a deportation hearing.

Represented by counsel, Reid applied for asylum and withholding of deportation. But, as the hearing went on, the immigration judge raised the question whether Reid really wanted these remedies and asked Reid's counsel, "Is he or is he not going to claim asylum and withholding of deportation as to Ghana?" Counsel replied, "It's not clear to me at this time." The judge said, "Then Mr. Opoku, I put it to you. Do you or do you not wish to seek asylum and withholding of deportation as to Ghana?" Reid replied, "Actually I do all right. But … well, the money. I'm being, you know, the bond I'm being asked to pay? I don't got much money to pay for it." The judge said, "Free legal services may be available to you. I assume you are aware of that? Notwithstanding, you are being represented by [counsel]." Reid answered affirmatively and then declared he wished to seek asylum and withholding of deportation.

After further proceedings, the hearing was adjourned without explanation. When it resumed, counsel told the court, "Upon further discussion with my client, notwithstanding at the very minimum a subjective fear of returning to Ghana, he at this time wishes to withdraw any application for relief and will accept the deportation order." Reid himself made the same declaration. The judge advised him that he would be deportable to Ghana. Reid did not object. His counsel said Reid waived appeal.

Seven days later on November 17, 1988 Reid acting pro se filed a notice of appeal. This notice was noted by an officer of the Immigration Service, but due to some mischance never reached the Board. Accordingly, the Board on August 9, 1989 dismissed Reid's appeal as untimely. Thereafter Reid petitioned this court for review.

Reid then acquired new counsel. On August 8, 1989 she wrote the Board stating that Reid "appears to have valid claims of political asylum, and may have suffered ineffective assistance from his previous counsel with regard to the withdrawal of his application before the immigration judge." After she departed on maternity leave, present counsel, Morrison & Foerster, was substituted for her on November 16, 1989.

On February 1, 1990 the Service notified the Board that in fact Reid had appealed to the Board at a timely date. It stated, "For this reason, the Service moves that the Board reopen this case and consider the appeal." No copy of this motion was provided to Reid or Morrison & Foerster.

On February 12, 1990 the Service moved the Ninth Circuit for an order "holding [the] review proceedings in abeyance" because of its motion to reopen the case. The Service noted, "Petitioner's counsel has authorized the undersigned to represent that he agrees that this proceeding should be held in abeyance." A copy of this motion before the Ninth Circuit was provided to Morrison & Foerster, who did not object to the Service's statement of the case and counsel's agreement. The Board itself entered no written order granting the motion to reopen.

On March 14, 1990, the Board reconsidered Reid's case and ruled that his appeal was timely. Morrison & Foerster filed nothing with the Board. The Board did take notice of a statement from Reid's second counsel, made in a letter of September 9, 1989, that Reid withdrew his asylum request because of his belief that his first counsel would seek asylum for him through Canada. The Board held that it would "not consider counsel's averment in this regard as evidence of record." Accordingly, it dismissed Reid's appeal and ordered deportation.

Reid appeals to this court.

## ANALYSIS

■ The Service was forthright in its confession of error as to the timeliness of Reid's appeal. In this respect, counsel for the Service has behaved as the counsel for the government should. Counsel for the government has an interest only in the law being observed, not in victory or defeat in any particular litigation.

■ On appeal, Reid argues that "neither he nor his counsel received notice of the BIA's decision to reopen the case or

reconsider the appeal." By February 12, 1990 counsel for Reid was informed that the Service had moved to reopen the appeal. But at no time did the Board enter a written order granting the motion. The Board's own regulations state: "Rulings upon motions to reopen or motions to reconsider shall be by written order." 8 C.F.R. § 3.8(d). The Board did not comply with this regulation.

The Service argues that Reid's objection is based on a technicality. As counsel had no notice that the Board had granted the motion of the Service, on a matter of life and death significance to Reid he had no representation. As the Board did not comply with its own regulation, its reconsideration of the case was a nullity.

■ The Service has acknowledged that the petitioner has evidence, proffered to this court, going to the merits of his asylum claim that was not available at the time of the original hearing. The Service has also acknowledged that it twice prevented the petitioner from presenting this evidence, first by treating his appeal as untimely and then by failing to give him any notice of reopening. At this late date, the Service asks that we hold the petition in abeyance and require the petitioner to make still another motion to the Board to consider the evidence. Based upon the record in this case, it would be an abuse of the Board's discretion to refuse such a motion and deny petitioner's request for remand to the immigration judge for a rehearing on his asylum claim. Accordingly, we reverse the Board and remand the case to the Board with instructions to remand to the immigration court for consideration of the asylum application on the ground that Reid has a substantial likelihood of being killed if he is deported to Ghana.

If proceedings do continue and there is a decision by the Board, we reserve to this panel of this court any further appeal.

REVERSED and REMANDED for proceedings in accordance with this opinion.